Morris Miller v. Commissioner.
Miller v. Commissioner
Docket No. 33224.
United States Tax Court
1953 Tax Ct. Memo LEXIS 270; 12 T.C.M. (CCH) 474; T.C.M. (RIA) 53155; April 30, 1953
*270 Petitioner gave certain shares of stock to members of his family which he valued in his gift tax return at $116.95 per share. Respondent increased the valuation of the stock and determined a gift tax deficiency. Held, the value of such stock at the date of gift was $140 per share. Josiah G. Holland, Esq., Stephen H. Hart, Esq., 350 Equitable Building, Denver, Col., and Claude M. Maer, Jr., Esq., for the petitioner. Everett S. Smith, Esq., for the respondent. RICE
Memorandum Findings of Fact and Opinion This case involves a gift tax deficiency in the amount of $45,893.44 for the calendar year 1947. The sole issue is the value of certain common stock that petitioner gave to his wife and children on July 9, 1947. A second issue which involved petitioner's right to an exclusion of $3,000, in connection with a gift made in 1946, was conceded by the respondent and effect will be given thereto in the computation under Rule 50. Some of the facts were stipulated. Findings of Fact The stipulated facts are so found and are incorporated herein by reference. The petitioner, an individual, resides in Denver, Colorado. He filed a gift tax return for 1947 with the collector of internal revenue *271 at Denver, on March 14, 1948. He reported gifts thereon totaling 1,750 shares of Miller's Groceteria Company common stock, par value $1.00 per share, which he made to members of his family on July 9, 1947, as follows: Number
of
Donee
Relationship
Shares
Mrs. Dora Miller
Wife
1,000
Mrs. Shirley Beck
Daughter
250
Mrs. Duvette S. Eller
Daughter
250
Mrs. Dora Miller,
In trust for Paul
Trustee
S. Miller, Son
250 Petitioner valued the stock at the date of gift at $116.95 a share, or a total value for the 1,750 shares of $204,662.50. Miller's Groceteria Company, hereinafter referred to as Millers, is an outgrowth of a grocery business started in 1903 in Denver, Colorado, as a sole proprietorship by Jacob Miller. In subsequent years, Morris Miller and Max Miller, sons of Jacob Miller, worked with their father. In 1919 the sons opened their own grocery store as a partnership, and in 1920 their father joined them. In 1921 the first additional store was opened, and during the nineteen-twenties a number of other stores were added to the chain. The business was incorporated in Colorado on June 3, 1931. During the nineteen-thirties Millers continued to expand, and during these years developed the super-market idea *272 of merchandising. By June 30, 1947, Millers had 13 super-market stores in operation and total sales for the preceding 12 months of $13,200,000. Control and management of Millers have always rested in the Miller family. As of July 9, 1947, the Miller family owned all of the 190,000 shares of preferred stock issued and outstanding. There were also outstanding as of that date 10,000 shares of common stock, par value $1.00 per share. [1] The common stockholders and their holdings after the gifts were made on July 9, 1947, were: Stockholder
Shares Owned
Morris Miller
3,251 1/3
Max Miller
3,023 1/3
Estate of Jacob Miller
1,665 1/3
Mrs. Dora Miller
1,000
Joseph Sunshine (Department head
and brother-in-law of petitioner)
300
Shirley M. Beck
250
Duvette S. Eller
250
Mrs. Dora Miller, Trustee for
Paul S. Miller
250
Dora J. Miller (Sister of the
petitioner)
10
Total
10,000 Joseph Sunshine *273 purchased his 300 shares of common stock from Max Miller on February 17, 1947, at a price of $85.95 per share, its book value. By agreement of the preferred stockholders, no dividends were required to be paid on the preferred stock until the year 1944, and regular dividends of five cents per share were maintained thereafter. The dividends paid on the common stock prior to July 9, 1947, were as follows: Year
Amount
1936
$1.05
1937
.30
1939
.30
1940
.30
1946
2.50
On or about November 12, 1947, the articles of incorporation of Millers were amended, and the authorized capital structure was changed to consist of the following stock: Class A Preferred 5% Cumulative - 200,000 shares, $1.00 par value. Class B Common (possessing all voting rights) - 50,000 shares, $10.00 par value. Class C Common - 50,000 shares, $10.00 par value. Exchange of the old stock for the new stock was approved on the following basis: Preferred Stock: Old preferred stock exchanged for new Class A preferred on a share-for-share basis. Class B Common: Each share of old $1.00 par value common stock exchanged for five shares of new Class B common stock. Class C stock was sold to employees of Millers, 5,400 shares in 1947, and 200 *274 shares in 1949. This stock, while it shared equally in earnings and assets with the Class B stock, was nonvoting and had limitations on its negotiability. Millers' invested capital, sales, earnings per share on its $1.00 par value common stock, and the book value per share of such common stock, for the period 1940-1949, inclusive, were as follows: Invested
Per Share
Book Value
Year
Capital
Sales
Earnings
Per Share
1940
$ 292,313
$ 3,516,677
$ 2.63
$ 8.43
1941
395,713
4,156,035
3.64
13.55
1942
445,886
5,853,849
5.28
18.81
1943
494,912
7,362,513
6.98
25.82
1944
549,963
7,243,325
5.83
32.73
1945
626,516
7,831,924
8.28
41.02
1946
1,107,086
11,333,849
47.43
85.94
12 months to June 14, 1947
1,365,872
13,212,869
57.51
116.95
1947
1,752,162
15,010,184
51.10 *
140.10 *
1948
2,722,915
17,583,930
42.85 *
182.95 *
1949
3,199,165
21,744,435
52.45 *
235.50 *
Millers' net income before taxes, its net profit after taxes, and the amount of earnings available for common stock after preferred dividends, for the period 1940 to 1949, inclusive, were as follows: Net Income
Net Profit
Available
Before
After
for
Year
Taxes
Taxes
Common
1940
$ 37,313
$ 26,313
$ 26,313
1941
76,344
36,445
36,445
1942
199,915
52,753
52,753
1943
266,146
69,846
69,846
1944
227,478
58,647
58,251
1945
346,645
92,335
82,835
1946
801,926
483,791
474,291
12 months to
June 14, 1947
968,480
584,565
575,065
1947
955,799
575,858
566,358
1948
808,313
485,040
475,040
1949
986,601
593,460
583,460
Millers' *275 ratio of its sales to its invested capital as compared with the average ratio of 10 small chain stores [2] and 9 large chain stores [3] for the years 1940 to 1949, inclusive, were as follows: Ratio of Sales to Invested Capital
(Sales / Invested Capital)
10 Small
9 Large
Year
Millers
Chains
Chains
1940
12.0
6.6
5.4
1941
10.5
6.9
5.8
1942
13.1
9.2
6.6
1943
14.9
9.7
6.4
1944
13.2
9.4
6.6
1945
12.5
9.7
6.8
1946
10.2
9.4
8.5
1947
8.6
9.5
8.8
1948
6.5
9.3
9.2
1949
6.8
8.3
8.3 Millers' ratio of net income before taxes to sales as compared with average ratios for the same large and small chain-store groups, and Millers' earnings on invested capital as compared with the average of such chain stores for the *276 years 1940 to 1949, inclusive, were as follows: Ratio Net Income
Before Taxes to Sales
Earnings on Invested Capital
Chain Stores
Chain Stores
Year
Millers
10 Small
9 Large
Millers
10 Small
9 Large
%
%
%
%
%
%
1940
1.10
2.42
2.11
11.67
12.66
9.7
1941
1.80
2.67
2.17
11.85
12.35
9.4
1942
3.40
2.97
1.97
14.39
12.07
7.3
1943
3.60
2.89
2.00
14.99
10.43
7.3
1944
3.10
2.93
2.19
10.81
9.99
7.7
1945
4.40
2.66
2.32
14.90
10.49
7.9
1946
7.10
3.80
2.98
43.80
22.58
17.1
1947
6.40
2.77
2.43
33.60
17.30
16.1
1948
4.60
2.69
2.24
18.14
16.09
14.8
1949
4.50
3.18
2.39
19.60
17.57
14.0
The averages of the earnings-price ratios and the dividend yields for such large and small grocery chains for the years 1940 to 1949, inclusive, were as follows: [4] *277 Average Earnings
Average Dividend
Price Ratios
Yields
Large
Small
Large
Small
Year
Chains
Chains
Chains
Chains
%
%
%
%
1940
10.47
12.76
6.65
9.70
1941
12.58
12.57
7.83
7.74
1942
12.63
13.01
7.62
6.83
1943
9.50
14.15
6.42
6.88
1944
9.82
11.43
5.38
6.80
1945
7.37
7.57
4.41
4.38
1946
12.21
18.70
4.09
4.62
1947
15.15
15.01
5.28
5.93
1948
16.69
18.10
6.26
7.28
1949
16.52
21.05
5.93
7.19
At the date of gift, Millers' common stock was an unlisted, inactive, closely-held corporate stock; and with the one exception aforementioned, no sales of such stock had occurred. In computing the deficiency herein, respondent valued Millers' common stock on July 9, 1947, at $225 per share. The fair market value of Millers' common stock on July 9, 1947, was $140 per share. Opinion RICE, Judge: Petitioner offered the testimony of two expert witnesses and the respondent offered the testimony of one expert witness as to the value of the common stock that was the subject matter of the gifts. We have carefully considered the testimony of these witnesses, the numerous exhibits offered in support of their opinions, and have weighed the relevant factors in fixing the value found for the stock on the critical date. We have omitted facts occurring in 1951 from *278 our findings as being too remote from July 9, 1947, to be material. Where, as here, the stock is closely held by members of a family, and actual sales are insufficient to establish a market price, we have considered, among other factors, the nature and history of the corporate business, its position in the industry, the market value of stocks of competing and comparable companies, the net value of the underlying corporate assets, the earnings of the corporation, its sales, invested capital, dividends paid, the book value of its assets, and its prospects for the future, based on past accomplishments, its future prospects at the date of the gift, and general economic conditions existing at that time. We have accorded to each relevant factor the weight to which it was, in our judgment, entitled. Based thereon, we have found as a fact that each share of stock on the date of the gift had a value of $140 per share. Since this value exceeds the value at which the stock was reported for gift tax purposes, there will be, as a result of our holding, an additional gift tax liability. Decision will be entered under Rule 50. Footnotes
1. The two written stipulations, and the requested findings, refer to the common stock outstanding at this time as having a par value of $1.00 per share, but paragraph 4 of the first written stipulation states that there was outstanding "as of that date 10,000 shares no par value common stock." We assume this statement was made inadvertently.↩
*. Adjusted to reflect 5 for 1 stock split-up.↩
2. The 10 small chain stores used for comparison are: Dixie Home Stores, Ltd.; Dunne (W. H.) Company; Fitzsimmons Stores, Ltd.; Loblaw, Inc.; Lucky Stores, Inc.; Market Basket (California); Red Owl Stores, Inc.; Stop & Shop, Inc.; Thorofare Markets, Inc.; and Winn & Lovett Grocery Company.↩
3. The 9 large chains used for comparison are: American Stores Company; First National Stores, Inc.; Food Fair Stores, Inc.; Grand Union Company; Great Atlantic & Pacific Tea Co.; Jewel Tea Company; Kroger Company; National Tea Company; and Safeway Stores, Inc.↩
4. The earnings-price ratio for each company was obtained by dividing the annual average market price into the earnings per share per year. The earnings-price ratios for the several companies were then averaged for each year. The dividend yield percentages were computed by dividing the annual dividend rate of each company by the average market price per year, and the per company yields per year were then averaged for each year. In the small chainstores group, the averages in the table are based on six or more stores until 1947, when data for all 10 stores were averaged.